UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

IN RE:                          )
                                )
Kimberly Ann Garner,            )     Case No. 04-13618C-7G
                                )
          Debtor.               )
                                )

## MEMORANDUM OPINION

This case came before the court on April 5, 2005, for hearing upon the Trustee's objection to Debtor's claim for property exemptions. Virginia B. Collins appeared on behalf of the Debtor and Martha R. Sacrinty appeared on behalf of the Trustee. Having considered the evidence and authorities submitted by the parties and the arguments of counsel, the court makes the following findings of fact and conclusions of law pursuant to Rule 7052 and 9014 of the Federal Rules of Bankruptcy Procedure.

## FACTS

This Chapter 7 case was filed on November 30, 2004. The schedules reflect that the Debtor is employed as an alternative learning specialist at Guilford College. In paragraph eight of her claim for property exemptions, the Debtor claimed as exempt an asset described as "TIAA-CREF retirement" which the Debtor stated had an "unknown" value. This exemption was claimed pursuant to N.C.G.S. § 1C-1601(a)(9).[1] On February 2, 2005, the Trustee filed

---

[1]The property that may be exempted by a debtor in a bankruptcy case is controlled by Section 522(d) of the Bankruptcy Code unless the state in which the bankruptcy court is located has opted out of Section 522(d), in which event the property that may be claimed as

an objection to Debtor's claim for property exemptions in which the Trustee asserted that the retirement benefit referred to in paragraph eight of the Debtor's claim for property exemptions did not fall within N.C.G.S. § 1C-1601(a)(9) and therefore may not be exempted by the Debtor.

The parties agree that the Debtor is a participant in a Section 403(b)[2] Defined Contribution Retirement Plan (the "Plan") that was established by Debtor's employer, Guilford College, and that Debtor's interest under the Plan is what she seeks to exempt in paragraph eight of her claim for property exemptions. A Section 403(b) plan is also known as a tax-sheltered annuity (TSA) and is a retirement plan for certain employees of public schools, employees of certain tax exempt organizations and certain ministers.[3] The Section 403(b) Plan at Guilford College is provided for by a plan document entitled Guilford College Defined Contribution Retirement Plan. According to the Plan document, the Plan provides for a separate account for each participating employee that meets the requirements of Section 403(b) and

exempt is controlled by state law. North Carolina, in N.C.G.S. § 1C-1601(f), has opted out of Section 522(d). Hence, the property claimed as exempt by the Debtor in this case was based upon N.C.G.S. § 1C-1601(a) which describes the property interests that may be exempted in North Carolina.

[2]This is a reference to the Internal Revenue Code, 26 U.S.C. § 403(b).

[3]Internal Revenue Service Publication 571 (Rev. December 2004).

"[b]enefits are based solely on the amounts of Plan Contributions to the Participant's Accumulation Account(s) and earnings, if any."[4]  The Plan document further provides that all benefits under the Plan are fully funded and provided through the funding vehicles selected by the participants.[5]  The funding vehicles available under the Plan are "annuity contracts or custodial accounts that satisfy the requirements of Code Section 401(f) issued for funding accrued benefits under this Plan and specifically approved by [Guilford College] for use under the Plan."[6]  The annuity contract that may be elected under a Section 403(b) plan is an annuity contract provided through an insurance company or other entity. The Fund Sponsors who provide the funding vehicles available under the Guilford College Plan are Teachers Insurance and Annuity Association ("TIAA") and College Retirement Equities Fund ("CREF").[7]  The Debtor apparently selected an annuity as her funding vehicle and her account consists of either a TIAA or a CREF annuity with a value of $10,447.56 as of the petition date.  It is not disputed that the Guilford College Plan meets the requirements of Section 403(b), that the Debtor is an eligible participant under the Plan and that the funding vehicle selected by the Debtor

---

[4]Plan, Article II, ¶ 2.1.

[5]Ibid.

[6]Plan, Article I, ¶ 1.10.

[7]Plan, Article V, ¶ 5.1.

- 3 -

likewise complies with the requirements of Section 403(b).  The
only matter in dispute is whether the Debtor's interest under the
Plan is a type of property interest that may be exempted under
N.C.G.S. § 1C-1601(a)(9).

LAW AND ANALYSIS

Under N.C.G.S. § 1C-1601(a)(9), a debtor may claim as exempt
property:

> Individual retirement plans as defined in the
> Internal Revenue Code and any plan treated in
> the same manner as an individual retirement
> plan under the Internal Revenue Code.

This provision permits debtors to exempt an "individual
retirement plan" and "any plan treated in the same manner as an
individual retirement plan under the Internal Revenue Code." Since
it is clear that the Debtor's Section 403(b) tax-sheltered annuity
is not an "individual retirement plan,"[8] the issue for
determination in this case is whether the Debtor's tax-sheltered
annuity is treated in the same manner under the Internal Revenue
Code as an individual retirement plan for purposes of N.C.G.S.

---

[8]It is clear from the pertinent definition in the Internal
Revenue Code that Debtor's retirement plan is not an "individual
retirement plan."  The definition of an individual retirement plan
is contained in Section 7701(a)(37) of the Internal Revenue Code.
Under that section an individual retirement plan is defined as an
individual retirement account under Section 408(a) of the Internal
Revenue Code or an individual retirement annuity under
Section 408(b) of the Internal Revenue Code.  Debtor's retirement
interest is a tax-sheltered annuity arising under Section 403(b) of
the Internal Revenue Code and therefore is not an "individual
retirement plan" as defined in the Internal Revenue Code.

§ 1C-1601(a)(9).  Because North Carolina has opted out of the exemptions provided for in Section 522(d) of the Bankruptcy Code, the exemptions which are available for bankruptcy debtors in North Carolina depend upon the law of North Carolina.  See Dominion Bank of Cumberlands, NA v. Nuckolls, 780 F.2d 408 (4th Cir. 1985); Zimmerman v. Morgan, 689 F.2d 471 (4th Cir. 1982).  Therefore, in matters involving exemptions this court must apply the law of North Carolina as declared by the Supreme Court of North Carolina, the State's highest court.  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938); Guaranty Trust Co. v. York, 326 U.S. 99, 65 S. Ct. 1464, 89 L. Ed. 2079 (1945).  If there are no decisions by the highest court of a state then a federal court must apply what it finds to be the state law after giving "proper regard" to relevant rulings of other courts of the state.  Comm'r v. Estate of Bosch, 387 U.S. 456, 87 S. Ct. 1776, 18 L. Ed.2d 886 (1967).  In the absence of state court authority a federal court sitting in North Carolina must apply the law as it appears the North Carolina Supreme Court would rule.  Erie R.R. Co. v. Tompkins, supra; Brendle v. Gen. Tire & Rubber Co., 505 F.2d 243, 245 (4th Cir. 1974).  This involves the federal court choosing the rule that it believes that the state court is likely to adopt in the future.

The North Carolina courts apparently have not addressed the issue of whether a Section 403(b) tax-sheltered annuity may be

- 5 -

claimed as exempt property under N.C.G.S. § 1C-1601(a)(9). Deciding whether the Debtor may exempt her tax-sheltered annuity involves the interpretation and application of the language in N.C.G.S. § 1C-1601(a)(9) which permits a debtor to exempt an interest that is treated in the same manner as an individual retirement plan under the Internal Revenue Code. In applying N.C.G.S. § 1601(a)(9), this court should adopt the interpretation of G.S. § 1C-1601(a)(9) which it appears would be adopted by the Supreme Court of North Carolina when confronted with the issue now before this court. The North Carolina Supreme Court has adopted the general rule that the exemption laws should be liberally construed in favor of the exemption. For example, in Elmwood v. Elmwood, 244 S.E.2d 668, 678 (N.C. 1978), the Supreme Court reiterated an earlier ruling by the court that "exemptions, being remedial in their nature ... should always receive a liberal construction, so as to embrace all persons coming fairly within their scope." It is also a rule in North Carolina that "provisions which restrict a debtor's access to his exemptions should be construed narrowly" and debtors should be allowed a great deal of flexibility in claiming and maintaining their exemptions. See Household Finance Corp. v. Ellis, 419 S.E.2d 592, 595 (N.C. App. 1992) (citing Comm'r of Banks v. Yelverton, 168 S.E. 505 (N.C. 1933)). Based upon the rules of construction which have been embraced by the Supreme Court of North Carolina, the wording

- 6 -

contained in G.S. § 1C-1601(a)(9), and the close similarity between the tax treatment afforded a Section 403(b) tax-sheltered annuity and the tax treatment afforded individual retirement plans, the court concludes that the Supreme Court likely would construe the statute in such a manner as to permit the exemption claimed by the Debtor in the present case.

Determining whether Debtor's tax-sheltered annuity is treated in the same manner as an individual retirement plan for purposes of N.C.G.S. § 1C-1601(a)(9) involves making a comparison between the tax treatment for the types of retirement interests.   Such a comparison establishes that there is a very close similarity between the tax treatment provided for the two types of retirement interests.   To the extent that there are differences, such differences are minimal and far outweighed by the similarities and do not alter the fact that both types of plans serve the same important purpose of providing participants with retirement funds when they no longer are earning wages.

The similarities between the tax-sheltered annuity and the individual retirement plan are numerous and substantive in nature. For example, contributions to both tax-sheltered annuities under Section 403 and individual retirement plans under Section 408 have the effect of reducing the plan participant's taxable income for the year.   The Internal Revenue Code provides that the employee's contributions and the employer's additions to a Section 403(b) tax-

sheltered annuity, up to a certain maximum amount, are excluded from the employee's gross income in the year in which those contributions and additions are paid.   26 U.S.C. § 403(b). Similarly, the Internal Revenue Code provides that cash contributions made by or on behalf of an individual to an individual retirement plan for that individual's benefit, up to a certain maximum amount, are deductible from the individual's gross income for the taxable year.   26 U.S.C. § 219(a).   While the contribution is excluded from gross income in the case of tax-sheltered annuities and deductible from gross income in the case of individual retirement plans, the treatment resulting from both contributions reduces taxable income during the years in which the contributions are made while providing a source of retirement income for future years.   Also, tax-sheltered annuities and individual retirement plans both receive the same type of deferral of taxation in that funds held in both types of accounts are not taxed until the years in which those funds are distributed. Subject to the statutory limitations placed on the amount of contributions that can be made, neither a Section 403(b) plan participant or an IRA account holder pays any taxes on amounts contributed to or held in a 403(b) plan or an IRA.   Under the Internal Revenue Code, individual retirement accounts created under Section 408(a) are explicitly exempt from taxation, except for

certain taxes imposed by Section 511 of the Internal Revenue Code.[9]
26 U.S.C. § 408(e).  Distributions from individual accounts or
annuities under Section 408(a) or (b) are taxed as annuity income
pursuant to Section 72 of the Internal Revenue Code in the year in
which the distribution is made.  26 U.S.C. § 408(d).  The Internal
Revenue Code provides the same basic treatment for tax-sheltered
annuities.  Distributions from tax-sheltered annuities are taxed as
annuity income pursuant to Section 72 in the year in which the
distribution is made.  26 U.S.C. § 403(b).  Thus, taxation of
amounts contributed to and held in both tax-sheltered annuities and
Section 408(a) and (b) individual retirement plans is deferred
until the year of distribution.  Another similarity between the tax
treatment of tax-sheltered annuities and individual retirement
plans is that participants are generally permitted to make
unrestricted withdrawals from both kinds of plans only upon
reaching age 59 ½ or under other very limited circumstances.  Under
the Internal Revenue Code, an employee participating in a tax-
sheltered annuity may only withdraw funds under the contract when
the employee reaches age 59 ½; when the employee experiences a
severance from employment; when the employee dies; when the
employee becomes disabled; or when the employee experiences a

---

[9]Section 511 provides for the taxation of "unrelated business
taxable income," which is income derived by an organization from
any unrelated trade or business regularly carried on by it.

hardship. 26 U.S.C. § 403(b)(11). While the holder of an individual retirement plan is not barred from withdrawals prior to age 59 ½, with certain exceptions,[10] there is a 10% additional tax applicable to withdrawals made from individual retirement plans before age 59 ½. 26 U.S.C. § 72(t)(1). Although there are no explicit prohibitions on withdrawals from individual retirement plans under Section 408(a) or (b), the Supreme Court recently recognized in Rousey v. Jacoway, 125 S. Ct. 1561 (2005), that the 10% penalty upon early withdrawals from IRAs is tantamount to a limitation on the right to receive payment from an IRA. At issue in that case was whether the debtors could exempt their IRAs under Section 522(d)(10)(E) of the Bankruptcy Code. Section 522(d)(10)(E) of the Bankruptcy Code provides that a debtor may exempt his right to receive "a payment under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor...." The Court first found that IRAs involve a right to payment on account of age. In so holding, the Court noted that the 10% penalty applies proportionally and

---

[10]Such exceptions include withdrawals made for medical expenses, withdrawals made pursuant to qualified domestic relations orders, withdrawals made by unemployed individuals for health insurance premiums, withdrawals made for higher education expenses, and withdrawals for first-time home purchases. See 26 U.S.C. § 72(t)(2).

thereby restricts the account holder's access to the full amount of
the IRA until the account holder turns 59 ½.  <u>Rousey</u>, 125 S. Ct. at
1567.  The 10% penalty therefore limits the right to withdraw funds
from an IRA.  <u>Id</u>.  In <u>Rousey</u>, the Court also concluded that an IRA
is "similar" to a stock bonus, pension, profit-sharing or annuity
plan for purposes of Section 522(d)(10)(E) and noted that the 10%
tax penalty "erects a substantial barrier to early withdrawal."
<u>Id</u>. at 1570.  Thus, in a practical sense, plan participants under
both Section 403 and Section 408 of the Internal Revenue Code have
only restricted access to plan funds before age 59 ½.  In addition,
both tax-sheltered annuities under Section 403(b) and individual
retirement plans under Section 408 are subject to minimum
distribution requirements under the Internal Revenue Code.
Generally, distributions from both tax-sheltered annuities and
individual retirement plans must begin on April 1 of the calendar
year following the later of the year in which the plan participant
reaches age 70 ½ or the year in which the plan participant retires.
26 U.S.C. § 401(a)(9)(C); 26 U.S.C. § 403(b)(10); 26 U.S.C.
§ 408(a) & (b).  Failure to adhere to the minimum distribution
requirements results in the imposition of a 50% excise tax on the
amount by which the minimum required distribution exceeds the
actual amount distributed during the taxable year.  26 U.S.C.
§ 4974(a).  Another similarity is that under both Section 403(b)
plans and individual retirement plans the interests of the

- 11 -

participants are fully vested. A tax-sheltered annuity or individual retirement plan must provide that the participant's interest in the annuity or plan is nonforfeitable in order for it to qualify for tax treatment under Section 403(b), Section 408(a) or Section 408(b) of the Internal Revenue Code. 26 U.S.C. § 403(b)(1)(C); 26 U.S.C. § 408(a)(4); 26 U.S.C. § 408(b)(4).

Perhaps the most significant similarity between tax sheltered annuities and individual retirement plans, however, is that the same purpose underlies the tax treatment of both types of plans. Critical to the Court's holding in Rousey that IRAs were similar to other plans listed in Section 522(d)(10)(E) and thus could be exempted under that section was the fact that IRAs and the other enumerated plans all serve the purpose of providing income that substitutes for wages in retirement. The Court specifically noted that this purpose was the "common feature" of all of the plans enumerated in Section 522(b)(10)(E)-stock bonus plans, pension plans, profit-sharing plans and annuity plans such as those established under Section 403(b) of the Internal Revenue Code. Rousey v. Jacoway, 125 S. Ct. 1561, 1569 (2005). The tax treatment received by IRAs under the Internal Revenue Code, specifically the applicability of the minimum distribution requirements, the deferred taxation of funds held in IRAs, and the 10% penalty imposed upon withdrawals before age 59 ½, convinced the Court that the purpose of an IRA is likewise to provide retirement income that

- 12 -

substitutes for wages.  Id.  The nearly identical tax treatment
that is accorded Section 403(b) tax sheltered annuities reflects
that the purpose of Section 403(b) likewise is to provide
retirement income that substitutes for wages.

Given the close similarity between the tax treatment of tax-
sheltered annuities and individual retirement plans and the common
purpose of both types of plans, the court is convinced that the
Supreme Court of North Carolina Court would conclude that
Section 403(b) tax-sheltered annuities are "treated in the same
manner as" individual retirement plans and therefore would construe
N.C.G.S. § 1C-1601(a)(9) as encompassing such tax-sheltered
annuities as property that may be exempted under that statute.  To
read the language of G.S. § 1C-1601(a)(9) as not permitting the
Debtor to claim her tax-sheltered annuity as exempt property would
involve a narrow, restrictive interpretation of the statutory
language and would be contrary to the rules followed by the North
Carolina courts under which the exemption statutes must receive a
liberal construction so as to embrace all property interests fairly
within the exemption statutes.  This court rejects a narrow,
restrictive reading of the statute in favor of a reading under
which Debtor's tax-sheltered annuity under the Guilford College
Defined Contribution Retirement Plan qualifies for exemption under
G.S. § 1C-1601(a)(9).

- 13 -

CONCLUSION

Having concluded that Debtor's interest under the Guilford College Defined Contribution Retirement Plan falls with N.C.G.S. § 1601(a)(9) and therefore may be exempted by the Debtor, the Trustee's objection shall be overruled.  An order so providing shall be entered contemporaneously with the filing of this memorandum opinion.[11]

This **29th** day of April, 2005.

WILLIAM L. STOCKS
United States Bankruptcy Judge

---

[11]An issue was raised by the parties as to whether the Debtor's tax-sheltered annuity would be excluded from the bankruptcy estate under Section 541(c)(2) of the Bankruptcy Code.  See In re Adams, 302 B.R. 535 (6th Cir. BAP 2003).  The court need not address this issue, since even if the tax-sheltered annuity became property of the estate, the Debtor is entitled to exempt the annuity, thereby removing it from the estate and placing it beyond the reach of the Trustee.

- 14 -